# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TED ROGERS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-12-460-JHP-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Ted Rogers, Jr. requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

1

mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on October 27, 1973, and was thirty-seven years old at the time of the administrative hearing (Tr. 30, 136). He has a high school education and past relevant work as a welder (Tr. 33). The claimant alleges that he has been unable to work since August 25, 2009 because of a pacemaker, depression, hypertension, and Peyronie's disease.

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on December 19, 2009 (Tr. 11). His application was denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated May 23, 2011 (Tr. 11-22). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner on appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) (Tr. 16). The ALJ concluded that although the claimant could not return to any past relevant work, he was nevertheless not disabled according to the Medical Vocation Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "grids"), specifically Medical Vocational Rule 201.28 (Tr. 21).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze the opinion of his treating physician, Dr. Judy Trent; (ii) by failing to properly analyze the claimant's credibility; (iii) by failing to properly analyze the claimant's RFC at step four; and (iv) by failing to find that the claimant's impairment of depression was a severe impairment at step two. The undersigned Magistrate Judge finds the claimant's contentions unpersuasive.

The claimant began receiving treatment from Dr. Judy Trent at least as early as April 2009 (Tr. 309). At that time, the claimant's main complaints were headaches and depression (Tr. 309). He attended monthly appointments, at which depression, fatigue, and headaches were his major complaints (Tr. 305, 307), and on November 12, 2009, Dr. Trent noted that his depression was poorly controlled (Tr. 301). On December 28, 2009, Dr. Trent completed a form entitled "Treating Physician Mental Functioning Assessment

Questionnaire" in which she stated that while she was treating the claimant for a mental condition, it did not impose more than minimal limitations (Tr. 300).

Dr. Trent completed a Medical Source Statement-Physical on January 27, 2011 in which she opined that the claimant could sit continuously for up to three hours and not more than five hours in an eight-hour workday, stand continuously for up to two hours and no more than four hours in an eight-hour workday, and walk continuously for up to one hour and no more than three hours in an eight-hour workday (Tr. 438-39). Further, Dr. Trent found that the claimant could occasionally lift up to 50 pounds, frequently lift up to 20 pounds, and continuously lift up to ten pounds and occasionally carry up to 20 pounds, frequently carry up to ten pounds, and continuously carry up to five pounds (Tr. 439). Dr. Trent also wrote that the claimant could occasionally bend, squat, crawl, stoop, crouch, and kneel and could not tolerate exposure to dust, fumes, and gases (T. 439). Finally, Dr. Trent wrote that the claimant would likely be absent from work due to his impairments about four days per month and wrote that the claimant's "problems are more related to his depression than his physical limitations" and that the claimant needed a psychiatric evaluation (Tr. 439).

State reviewing physician Dr. Ron Smallwood, Ph.D., completed a Psychiatric Review Technique (PRT) on February 17, 2010 in which he found that although the claimant suffered from depression, it was deemed not severe (Tr. 310, 313). Dr. Smallwood found that the claimant had mild limitations in activities of daily living,

5

maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 320).

The claimant began receiving mental health treatment at Carl Albert Mental Health Center on July 22, 2010 (Tr. 438). Dr. Webb noted that the claimant's affect was depressed and sad and his mood was depressed and tired (Tr. 438). It was also noted that the claimant had suicidal ideations with no intent, but was instructed to notify physicians at Carl Albert if he felt more suicidal (Tr. 438). The assessment at that time was major depression, recurrent and physicians decided to increase his dosage of Prozac at his next appointment (Tr. 436). Further, the treatment plan was for claimant to attend counseling sessions every three months as needed (Tr. 436). At an appointment in October 2010, the claimant was noted to have suicidal ideations with intent, and the claimant had a blunted and absent affect with sad mood (Tr. 435). Because the claimant was experiencing hallucinations, he was prescribed Risperdal (Tr. 435). By January 3, 2011, the claimant was effectively responding to medication (Tr. 434).

The claimant testified that his heart problems caused him to stop working as a welder, and he was eventually outfitted with a pacemaker. He stated that since the pacemaker was inserted, he has developed and struggled with severe depression "where [he] want[s] to stay away from everybody, and [he] get[s] real irritable towards everybody" (Tr. 35). He testified that he had no physical problems besides the pacemaker, which restored him to 80% physically, and instead testified that his depression began three months after the insertion of the pacemaker (Tr. 36). The

claimant testified that his depression causes him to stay locked up in his room and shower only twice a week when reminded by his wife or daughter (Tr. 37). He claimed that his medications do not seem to help his symptoms of depression but have stopped him from hearing voices (Tr. 38-39). Finally, the claimant testified that his depression causes an inability to focus and fatigue (Tr. 39-40).

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or

contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted]. In this case, the ALJ adequately discussed and analyzed Dr. Trent's opinion. The ALJ specifically noted the length and frequency of the treatment relationship between Dr. Trent and the claimant, that Dr. Trent's opinions were not supported by objective evidence, and that Dr. Trent was not a specialist (and that the claimant's cardiologist had released the claimant to full-time activity without restrictions).[3]

The claimant also argues that the ALJ erred by failing to accept Dr. Trent's recommendation that the claimant was in need of a consultative psychological examination. The ALJ has broad latitude in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence

---

[3] The claimant's argument that the ALJ failed to properly analyze the claimant's RFC at step four is premised on and subsumed by the ALJ's failure to adopt the treating physician opinion of Dr. Trent. Specifically, the claimant argues that the ALJ erred by failing to adopt Dr. Trent's findings that the claimant would need to take unscheduled breaks and miss more than four days of work per month. The undersigned finds that this argument should be rejected for the same reasons cited *supra*.

8

suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. "Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial[.] Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id.* [citation omitted]. The ALJ noted that Dr. Trent was of the opinion that the claimant's limitations were caused by his depression as opposed to physical problems (Tr. 18). With regard to Dr. Trent's notation that the claimant was in need of a consultative psychological examination, that opinion was given approximately three weeks *after* notations from Carl Albert indicate that the claimant's depression was effectively responding to medication (Tr. 434). Moreover, the claimant's representative did not request that the ALJ order a consultative psychological consultation, and given the claimant's treatment records from Carl Albert, there is nothing in the record that clearly establishes the need for such a consultation. *Hawkins*, 113 F.3d at 1168 (noting that without a request by counsel, a duty will not be imposed on the ALJ to order an examination unless the need is clearly established in the record).[4]

---

[4] The claimant also argues that the ALJ erred by failing to find that the claimant's depression constituted a severe impairment. In making this argument, the claimant argues that the ALJ erred on Dr. Trent's 2009 opinion in which she wrote that the claimant did not have a mental impairment which caused more than minimal limitations on the claimant's ability to work. However, the record is clear that the ALJ considered *all* of the evidence of the claimant's mental impairment in deciding whether the impairment was not severe, as the ALJ clearly referenced the

-9-

The claimant next argues that the ALJ erred by failing to properly assess his credibility. Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

In this case, the ALJ summarized the claimant's testimony and determined that his "statements concerning the intensity, persistence, and limiting effects of his symptoms [were] not credible to the extent they are inconsistent with the . . . residual functional capacity assessment" (Tr. 13). The Court has disapproved this language in the past, as it suggests an improper approach to the process, *i. e.*, assignment of an RFC and subsequent measurement of claimant credibility against the RFC, rather than initial evaluation of the claimant's credibility (along with other evidence in the case) and subsequent formulation

---

records from Carl Albert in which it is found that the claimant's depression was effectively controlled by medications (Tr. 434).

of an appropriate RFC based thereon. *See, e. g., McFerran v. Astrue,* 2011 WL 3648222, *2-*3 (10th Cir. Aug. 19, 2011) ("The ALJ's ultimate credibility determination is a singularly unhelpful sentence: '[T]he claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.' . . . The ALJ's errors in the credibility assessment necessarily affect the RFC determination."), [unpublished opinion], *quoting Poppa v. Astrue,* 569 F.3d 1167, 1169 (10th Cir. 2009). But the ALJ in this case the elaborated by discussing the medical evidence on which he relied to find that the claimant was not credible, *i. e.*, the claimant's testimony that it was his depression (and not his physical impairments) that precluded work, that he did not seek treatment for his depression until two years after he stopped working, and that medications had been helpful in controlling his symptoms (Tr. 15, 17, 19). The ALJ also noted that the claimant was attending counseling every three months, and that treatment notes indicated that medications had been effective in the treatment of his depression (Tr. 15). Thus, the ALJ linked his credibility determination to the evidence as required by *Kepler*, and provided specific reasons for the determination in accordance with *Hardman*. His credibility determination was therefore not clearly erroneous.

Accordingly, the decision of the Commissioner should be AFFIRMED.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were applied by the ALJ and that the decision of the Commissioner is therefore supported by

substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be AFFIRMED. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2014.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma